UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BABCOCK & WILCOX POWER GENERATION GROUP, INC., fka THE BABCOCK & WILCOX COMPANY, | ) ) ) ) | CASE NO. 5:13-cv-2071 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| R.T. PATTERSON COMPANY, INC., et al., | ) ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is defendants' motion for partial dismissal of the complaint (Doc. No. 25 ["Motion"]), plaintiff's memorandum in opposition (Doc. No. 28 ["Opp'n"]), and defendants' reply (Doc. No. 29 ["Reply"]).[1] For the reasons set forth herein, the motion is **GRANTED**.

I. BACKGROUND

Plaintiff Babcock & Wilcox Power Generation Group ("B&W") filed its complaint on September 18, 2013 against R.T. Patterson Company, Inc. ("RTP") and Mahendra Patel ("Patel"). (Doc. No. 1 ["Compl."].) The complaint alleges that B&W, a company that designs, manufactures and constructs systems and equipment to meet the power need of utilities (Compl. ¶ 6), issued a purchase order on January 10, 2006 to RTP, a privately owned company that provides engineering and technical support, for RTP to provide a flue system, structural

---

[1] Any page number references herein will be to the page identification number generated by the Court's electronic docketing system.

steel, foundations and SCR[2] piping design and project management for a project being performed at a plant in La Cygne, Kansas by B&W for its customer, Kansas City Power & Light Company ("KCP&L") (*id.* ¶¶ 7, 9). B&W issued amendments to the purchase order on the following dates: August 29, 2006, January 12, 2007, and October 17, 2007. (*Id.* ¶¶ 11-13.)

The original purchase order, along with its acknowledgement and three amendments, is referred to in the complaint and herein as the "Contract." (*See* Compl., Exs. 1-5.) Incorporated into the Contract, *inter alia*, are B&W's Conditions of Subcontract for Engineering Services, REV 06/01/04 ("Conditions of Subcontract"). (Compl. ¶ 14.)

Utilizing the design work of RTP, B&W completed its work on the La Cygne plant in 2007, and performance testing at the plant was completed in approximately June of 2007. (*Id.* ¶ 15.) However, due to errors by RTP on other B&W projects performed for other companies, in 2011, B&W conducted a review of RTP's work at KCP&L and discovered that RTP had erred in engineering the air heater outlets and the inlet flue supports. (*Id.* ¶ 16.) B&W informed KCP&L of the errors because they constituted safety issues. KCP&L put the unit on emergency outage while B&W implemented repairs and added support to the structural steel. (*Id.* ¶ 17.) B&W was forced to make the repairs because of RTP's alleged failure or refusal to do so, and B&W now argues, in its first and second claims for relief, that it is entitled to be reimbursed and/or indemnified by RTP for "all reasonable expenses incurred by B&W in correcting and/or replacing the defective work, which exceeds $2 million in damage to date[,]" and with respect to damages "incurred . . . by reason of a violation by RTP as to any standards applicable to RTP's

---

[2] In its opposition brief, plaintiff indicates that "SCR" stands for "selective catalytic reduction systems," which convert potentially harmful nitrogen oxide emissions from boiler operation into emissions that are relatively inert. (Opp. at 200.)

2

performance of the Subcontract and completion of the work to be furnished under the Subcontract." (*Id*. ¶¶ 24, 25, 27.)

In its third claim for relief, the only one at issue in the instant motion, B&W alleges a claim of professional negligence against Patel, an engineer employed by RTP, for his alleged failure to "perform engineering services at the same standard as would be performed by a reasonably skilled and prudent engineer in the field[,]" and against RTP for its alleged failure to employ professional engineers that would live up to that standard of care. (*Id*. ¶¶ 30-32.) B&W seeks damages it was "required to expend in correcting and replacing the defective work of or caused by RTP and/or Patel[.]" (*Id*. at 8, "Wherefore" clause.)

Defendants move for dismissal of the third claim for relief, arguing it is barred because it seeks redress in tort for a claim arising solely under the terms of a contract, and by application of the economic loss doctrine.

## II. DISCUSSION

**A. Standard of Review**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678,129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B.  Analysis**

1. B&W's professional negligence claim against RTP is improper because it is predicated on conduct arising out of a purported breach of contract

Defendant RTP argues that its duty to use due care and diligence to execute and complete the design and detail engineering on the relevant project flowed from the Contract. (Motion at 184, citing Compl. ¶ 21.) RTP asserts that any tort claim against it is, therefore, barred.

In this diversity case, the Court's task is "to determine the most likely disposition of the issue under Ohio law." *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1029 (6th Cir. 2003). "In Ohio, a breach of contract does not create a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (citing *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). "'[T]he existence of a

contract action generally excludes the opportunity to present the same case as a tort claim[,]'" *Thornton v. Cangialosi*, No. 2:09-CV-585, 2010 WL 2162905, at *2 (S.D. Ohio May 26, 2010) (quoting *Wolfe*, 647 F.2d at 710), unless "the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owned even if no contract existed." *Textron Fin. Corp.*, 684 N.E.2d at 1270. In addition, any such tort claim "must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract." *Id*. (citation omitted, emphasis in original).

Here, RTP's professional design services to B&W were provided under the terms of the Contract. That Contract requires RTP to provide services that "reflect professional ability and thoroughness, with attention to detail, *consistent with the procedures of consulting engineering practice*." (Compl. Ex. 5 [Doc. No. 1-5] at 24, § 6.2, emphasis added.) It further requires RTP to "so execute and complete the Work, and remedy any defects therein, that no act or omission of [the Engineer] in relation thereto shall constitute, cause or contribute to any breach by B&W of any of its obligations under the Prime Contract." (*Id.* § 6.3.) Thus, in this particular case, any professional duties owed by RTP were written directly into the Contract and became a term of the Contract. *See Kishmarton v. Wm. Bailey Constr., Inc.*, 754 N.E.2d 785, 787 (Ohio 2001) (where the parties entered into a contract for a construction company to construct a residence in a "workmanlike manner," the court concluded that the warranty of good workmanship "arises from the contract"). B&W acknowledges this very fact in its breach of express warranty claim, where it alleges:

> In accordance with Section 11.1 of the Conditions of Subcontract, RTP warranted that the services performed and completed under the Contract would "(a) conform to the requirements of the Subcontract; (b) be free of defects in design, workmanship and materials; (c) be completed and performed in accordance with accepted, professional engineering standards; (d) be suitable for

5

the purpose intended; (e) conform to all applicable laws, rules, code[s], standards and regulations; and (f) result in materials and equipment which give proper and continuous service under all conditions of service required by, specified in or which may be reasonably inferred from the Subcontract Drawings, the Subcontract Specification, the Design Criteria and all other documents which form a part of the Subcontract."

(Compl. ¶ 22.) This is the same standard of care that B&W alleges was breached in its professional negligence claim. (*See* Compl. ¶¶ 30-32.)

B&W also fails to identify separate damages proximately caused by RTP's alleged professional negligence. Here, the breach of express warranty claim alleges damages in the form of "all reasonable expenses incurred by B&W in correcting and/or replacing the defective work, which exceeds $2 million in damage to date." (Compl. ¶ 25.) Almost identically, the professional negligence claim alleges "damage in the form of requiring B&W under its prime contract with KCP&L to correct and/or replace the defective work caused by RTP." (*Id.* ¶ 32.) There are no damages attributable to the professional negligence claim that are other than the damages attributable to the breach of express warranty claim. Therefore, under Ohio law, the former cannot be separately maintained in the face of the latter.

2. B&W's claim for professional negligence is barred by the economic loss doctrine

RTP also argues that the professional negligence claim is barred by the economic loss rule, which "generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005) (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624 (Ohio 1989); *Floor Craft Floor Covering, Inc. v. Parma Comm. Gen. Hosp. Ass'n*, 560 N.E.2d 206 (Ohio 1990)); *see also HDM Flugservice GmbH*, 332 F.3d at 1028 (differentiating among the three general kinds of damages: "personal injury, property damage, or economic damage"). As explained by the court

in *Chemtrol Adhesives*, "where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule . . . that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery." *Chemtrol Adhesives*, 537 N.E.2d at 630 (citing Prosser, Law of Torts (4 Ed.1971) 665, Section 101, footnotes omitted); *see also Floor Craft*, 560 N.E.2d at 211 ("Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.").

B&W argues that the facts pled here fall within an exception to the applicability of the economic loss rule. It cites *Ballreich Bros., Inc. v. Criblez*, No. 05-09-36, 2010 WL 2735733, at *4 (Ohio Ct. App. July 12, 2010) for the proposition that "the rule does not preclude professional negligence claims resulting in only economic loss[.]" This is true, so far as it goes. However, where, as here, there is privity of contract, which generally renders the economic loss rule inapplicable, "a tort claim must be analyzed to determine whether it is merely a recapitulation of the breach-of-contract claim or whether it alleges a breach of an independent duty." *Ineos USA L.L.C. v. Furmanite America, Inc.*, No. 1-14-06, 2014 WL 5803042, at *5 (Ohio Ct. App. Nov. 10, 2014) (citation omitted) (noting that "the economic loss rule will bar the tort claim if the duty only arose by contract[]") (internal quotes and citation omitted). Moreover, as already noted, even "[w]here the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the breach of contract." *Id.* at *6 (citation omitted). This latter requirement has not been met by B&W, as explained above. B&W's professional negligence claim against RTP is no more than the breach of express warranty claim repackaged.

3. B&W's professional negligence claim against defendant Patel is barred under the economic loss doctrine because there is no privity of contract

B&W has also asserted a single claim for relief against defendant Patel based upon his alleged professional negligence.

"[I]n the absence of privity of contract no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications." *Floor Craft*, 560 N.E.2d at 207, syllabus.

Here, the complaint alleges that Patel "was an engineer employed by RTP and who had responsibilities associated with performing work as to and managing the subject Contract . . . between B&W and RTP." (Compl. ¶ 8.) There is no allegation of privity of contract between Patel and B&W, and nothing in the complaint or its attachments suggests privity. Under *Floor Craft*, B&W's professional negligence claim against Patel is barred.

Even if there were privity, the negligence claim against Patel would fail for the same reasons (as discussed above) that it fails against Patel's employer, RTP.

### III. CONCLUSION

For the reasons set forth herein, defendants' motion (Doc. No. 25) for dismissal of plaintiff's third claim for relief (professional negligence) is **GRANTED**.[3]

**IT IS SO ORDERED**.

Dated: February 12, 2015

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**

---

[3] In its opposition brief, B&W seeks leave to amend its complaint, should the Court be inclined to grant defendants' motion, so as to "elaborate, if necessary, on the appropriateness of the [professional negligence] claim." (Opp'n at 215.). The Court is not persuaded that there is any way, on these facts, to overcome the bar in Ohio law. If, however, B&W believes *in good faith* that it can amend the complaint on this basis then it may, of course, file a motion accordingly.